# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 10 2017, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joshua D. Hershberger
Hershberger Law Office
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Matthew Caudill, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | April 10, 2017 <br><br> Court of Appeals Case No. 72A01-1609-CR-2066 <br><br> Appeal from the Scott Circuit Court <br><br> The Honorable Roger L. Duvall, Judge <br><br> Trial Court Cause No. 72C01-1511-MR-4 |

**May, Judge.**

James Matthew Caudill appeals his sentence for murder[1] and Level 5 felony robbery[2] with a sentencing enhancement for the use of a firearm in the commission of the crimes.[3] He argues:

> 1. The trial court abused its discretion when it did not consider Caudill's guilty plea as a mitigating factor when sentencing him;
>
> 2. The trial court abused its discretion when it did not consider Caudill's statement of remorse as a mitigating factor when sentencing him; and
>
> 3. The trial court abused its discretion when it found "the imposition of a reduced sentence would depreciate the seriousness of the crime," (Br. of Appellant at 13), and used that finding as an aggravating factor when sentencing him.

We affirm.

# Facts and Procedural History

On November 7, 2015, in Austin, in Scott County, Indiana, Caudill and his girlfriend, Ginger Cox, entered seventy-eight-year-old John Turner's store to retrieve a ring Caudill pawned to Turner after Caudill stole the ring from Justin Roberts. Turner would not permit Caudill to buy back the ring at the original

---

[1] Ind. Code § 35-42-1-1 (2014).

[2] Ind. Code § 35-42-5-1 (2014).

[3] Ind. Code § 35-50-2-11(e) (2015).

pawned price, so Caudill and Cox left the store and went to their apartment. Caudill changed his clothes, putting on a dark hoodie and jeans to cover the tattoos on his leg.

[3] Caudill and Cox returned to Turner's store, parking slightly down the street to watch customers leave Turner's store. While they were waiting, Caudill outfitted a gun he had obtained from his brother, Christopher, with a homemade silencer. After they believed everyone had exited the store, Caudill went inside the store with the gun and a backpack. Caudill returned to the vehicle a short time later, told Cox he shot Turner in the head, left the shell casing behind, and stole coins, jewelry, and cash.

[4] Caudill then found Roberts, returned the ring he had stolen from Roberts, and gave Roberts a few gold necklaces and approximately $4,500.00 in cash. Caudill told Roberts about the robbery and about shooting Turner. Caudill then burned his clothes. He asked Christopher to bury the cash and the gun and to burn the security tape from the apartment complex showing Caudill packing up the proceeds from the robbery and burning his clothes.

[5] A short time later, police arrested Caudill, who was not cooperative. Caudill attempted to hide money and a gun during the arrest, but police recovered both. While in jail, he called someone to tell them he had hidden cash "at the exact place where he was arrested . . . where the leaves were pushed away . . . there was [sic] two bags of peas that were then sealed up and those bags contained approximately $8,000.00 in cash," (Tr. at 115), and asked that person to retrieve

it. During a search of Caudill's apartment, police found the murder weapon and jewelry, cash, and coins stolen from Turner. The police also located the burn pile where Caudill burned his clothes and recovered a shell casing matching Caudill's gun at the crime scene.

[6] On November 13, 2015, the State charged Caudill with two counts of murder and one count each of Level 2 felony robbery resulting in serious bodily injury,[4] Level 3 felony robbery taking property by force while armed,[5] Level 6 felony resisting law enforcement,[6] Level 6 felony obstruction of justice,[7] and Class A misdemeanor carrying a handgun without a license.[8] The State requested the trial court enhance Caudill's sentence based on his use of a firearm in the commission of the crime and filed a notice of its intention to seek a sentence of life without parole[9] if Caudill were convicted.

[7] A jury trial was to commence on August 2, 2016, but on July 28, 2016, the parties entered a conditional plea agreement whereby Caudill would plead guilty to one count of murder and one count of Level 5 felony robbery. The other charges against him would be dismissed, as well as eight other pending

---

[4] Ind. Code § 35-42-5-1 (2014).

[5] Ind. Code § 35-42-5-1 (2014).

[6] Ind. Code § 35-44.1-3-1(b)(1) (2014).

[7] Ind. Code § 35-44.1-2-2 (2014).

[8] Ind. Code § 35-47-2-1 (2014).

[9] Ind. Code § 35-50-2-9 (2015).

felony charges and a pending probation revocation petition based on his commission of a Class B misdemeanor. The plea agreement left sentencing to the trial court's discretion, with a sentencing range for murder of forty-five to sixty-five years, with a sentence enhancement of five to twenty years, and a concurrent one to six years for robbery. Thus, the sentencing range for the crimes could be from fifty to eighty-five years.

[8]    The trial court accepted the plea agreement and, on August 11, 2016, held a sentencing hearing. Regarding aggravating and mitigating factors, the trial court stated:

> You have a history of criminal or delinquent behavior. . . . You have recently violated conditions of probation or pre-trial release. You were on continued probation from the Scott Superior Court case at the time that this, these acts were committed. The victim, John Turner, was at least 65 years of age, he was 78. He was everything we hope a person should be in this country. Not a celebrity, not a star athlete, not someone who gets his name in the newspaper every day, but someone who lived the true American dream. He worked hard. He left his home and came to Indiana, he sacrificed for his family. He served as a wonderful example to friends, family and this community. The statutory aggravating factor has always been [sic] a special meaning to this court as it speaks to victims less than 12 years or victims older than 65 or 65 and older. This is appropriate because we as a society believe that the young and the elderly need, deserve and have earned, that special protection. John Turner certainly has earned that. There are listed statutory mitigating factors. You have listed that it could be a hardship upon your family. The Court does not believe that to be an appropriate statutory factor for consideration. Under best circumstances as [Defense Counsel] correctly noted you will be an old man before you get

out under these crimes, out of incarceration from these crimes. You would, you have no way to be of assistance to your family during that period of time or to your son. The drug use, the voluntary drug use. Anyone who's been in this court knows that for the person who comes before me who expresses the sincere desire to deal with their addictions and try to change their life, there is great sympathy. However, the Court is under no obligation nor will it consider as a mitigating circumstance voluntary drug use in a crime of violence. And finally, I will acknowledge, I don't know whether to go so far as to call it a mitigating circumstance, but I will acknowledge that you have plead [sic] guilty, you have saved the county considerable money and time and more importantly you have eliminated the need of [sic] the victim's family to have to go through an excruciatingly painful trial. Having done this a long time I know how much that can be. But under those circumstances I find that to impose a mitigated or to consider that factor to impose a mitigated or even the advisory sentence would diminish the seriousness of the offense. . . . This was not a crime of heat or passion where the emotions of the defendant caused an angry, spontaneous act. This was not a crime of opportunity where there was[,] without pre-meditation[,] circumstances which presented themselves to a defendant and that defendant took advantage of those circumstances to commit a crime. This was a planned, premeditated, cold act of robbery and murder. . . . Twice you saw John Turner's face, you heard his voice, you heard his interactions with the other people in the shop. Twice you heard and saw his humanity and you could have done anything up to 3:46 on that day to have changed your course of action, and you failed to do so. Instead of considering the better way, you only took steps to hide the path of your actions. In those last minutes before you finally went into the shop you took a plastic pop bottle, attached it to your gun to hide and muffle the sound of the act that you were about to commit. . . . In your case the evidence leads[,] to me[,] to come to only two circumstances that are most probable, you killed John Turner for the pure gratuitous act of killing him, for the thrill of it or by killing John Turner you

eliminated the only person who could identify you as the perpetrator of this robbery. Either circumstance speaks volumes about the lack of character and about your need to be in society. After the murder and robbery, you took steps to hide the fruits of your crime. . . . The State's asked me to consider lying in wait as an aggravator. That's an appropriate request on behalf their part although I do not know that I need to make the specific finding that that is a factor because it is sufficient for the court to note the circumstances that you, that support a lying in wait finding, that you waited until John Turner was at his most vulnerable and most alone before you committed this act. You have forever changed the lives of the Turner family and you forever changed the lives of your family.

(Tr. at 199-203.) The trial court sentenced Caudill to sixty-five years for murder and enhanced that sentence by twenty years for the use of a firearm in the commission of the crime. The trial court sentenced him to six years for robbery, to be served concurrently, for an aggregate sentence of eighty-five years.

# Discussion and Decision

[9] "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id*. When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only if "the record does not

support the reasons, or the sentencing statement omits reasons that are clearly supported by the record, and advanced for consideration, or the reasons given are improper as a matter of law." *Id.* at 490-1.

[10] The sentencing range for murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3(a) (2015). The sentencing range for Level 5 felony robbery is one to six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b) (2014). A person who commits "a felony under IC 35-42[10] that resulted in death" while "knowingly or intentionally us[ing] a firearm" may be imprisoned for an "additional fixed term." Ind. Code § 35-50-2-11 (2015) (footnote added).

[11] Caudill's plea agreement stated, in relevant part:

> The Parties agree that the sentence range available to the Court on Count I [murder] shall be from FORTY-FIVE (45) to SIXTY-FIVE (65) YEARS, ENHANCED by FIVE (5) to TWENTY (20) YEARS, pursuant to I.C. 35-50-2-11 (Firearms Enhancement), for a TOTAL sentencing range of from FIFTY (50) to EIGHTY-FIVE (85) years.
>
> * * * * *
>
> The Parties agree that the sentence range available to the Court on Count IV shall be from ONE (1) to SIX (6) YEARS.

---

[10] Murder is a felony under Ind. Code § 35-42-1-1 (2014).

(App. Vol. II at 11-12) (emphasis in original). The plea agreement also indicated the sentences were to be concurrent. The trial court sentenced Caudill to sixty-five years for murder, enhanced by twenty years for the use of a firearm in the commission of the crimes, to be served concurrent with a six-year sentence for Level 5 felony robbery, for an aggregate sentence of eighty-five years.

## *I. Guilty Plea as Mitigating Factor*

[12] The trial court is not required to find mitigating factors or give them the same weight that the defendant does. *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000). However, a court abuses its discretion if it does not consider significant mitigators advanced by the defendant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 490. The trial court stated, regarding its consideration of Caudill's guilty plea as a mitigator:

> And finally, I will acknowledge, I don't know whether to go so far as to call it a mitigating circumstance, but I will acknowledge that you have plead [sic] guilty, you have saved the county considerable money and time and more importantly you have eliminated the need of [sic] the victim's family to have to go through an excruciatingly painful trial. Having done this a long time I know how much that can be. But under those circumstances I find that to impose a mitigated or to consider that factor to impose a mitigated or even the advisory sentence would diminish the seriousness of the offense.

(Tr. at 200.) Caudill argues the trial court abused its discretion when it did not give his guilty plea mitigating weight when imposing his sentence.

[13] Caudill pled guilty five days before his trial was to begin. "A plea's significance is reduced if it is made on the eve of the trial[.]" *Caraway v. State*, 959 N.E.2d 847, 853 (Ind. Ct. App. 2011), *trans. denied*. Further, the State filed a notice to the court early in the proceedings that it would pursue a sentence of life without the possibility of parole, but Caudill's plea capped his sentence at eighty-five years. Also, as a condition of the plea, the State dismissed multiple felony charges and a probation revocation pending against him. Finally, the State had gathered an abundance of evidence that Caudill committed the crime. Surveillance video indicated Caudill was the last person to enter Turner's store prior to Turner's murder; jail phone surveillance recorded Caudill asking someone to obtain and conceal the cash from the robbery that Caudill had hidden under leaves when he was arrested; police recovered the murder weapon and the silencer from Caudill when he was arrested and they found bags of cash, jewelry, and coins as part of their search of Caudill's residence; Cox had already pled guilty and agreed to testify against Caudill; and Caudill admitted to Cox he robbed and killed Turner.

[14] "A guilty plea is not necessarily a mitigating factor where the defendant receives a substantial benefit from the plea or where evidence against the defendant is so strong that the decision to plead guilty is merely pragmatic." *Amalfitano v. State*, 956 N.E.2d 208, 212 (Ind. Ct. App. 2011), *trans. denied*. Based on the timing of his plea, the benefit of the fixed sentenced derived from the plea, and the mountain of evidence the State had against him, we cannot conclude Caudill's plea was anything but pragmatic. Accordingly, we hold the

trial court did not abuse its discretion when it did not consider Caudill's guilty plea as a mitigating factor when sentencing him.

## II. Statement of Remorse as Mitigating Factor

[15]    At his sentencing hearing, Caudill stated:

> I just want to say that I'm sorry for the things that I've done. I know I have hurt a lot of people, not only your family but mine as well. I regret what happened and I'd take it back if I could. There's really nothing I can say or do to change any of this. When I robbed your family I also robbed my 3 year old son of a father too. All I can do is accept my fate and continue to prison and try to better myself as a person and try to get out one day and be in my son's life. I, I was not in my right mind that day, I was under the influence of drugs, and I know if I was in my right mind I wouldn't have done it, I wouldn't have done it.

(Tr. at 179.) The trial court did not indicate it considered Caudill's statement as a mitigator or aggravator when sentencing him. A trial court is not obligated to accept a defendant's remorse as a mitigating factor. *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. "The trial court possesses the ability to directly observe a defendant and can best determine whether a defendant's remorse is genuine. Substantial deference must be given to the trial court's evaluation of a defendant's remorse." *Id*. Therefore, we hold the trial court did not abuse its discretion when it did not find Caudill's remorse as a mitigating factor when imposing his sentence.

### III. Improper Aggravating Factor

Caudill contends the trial court used an improper aggravating circumstance because it stated: "[U]nder those circumstances I find that to impose a mitigated or to consider that factor to impose a mitigated or even the advisory sentence would diminish the seriousness of the offense." (Tr. at 200.) Caudill relies on *Taylor v. State*, 840 N.E.2d 324, 340 (Ind. 2006), to support his argument. In *Taylor*, our Indiana Supreme Court held:

> The court incorrectly identified as an aggravating factor the fact that the "imposition of [a] reduce[d] sentence would depreciate the seriousness of the crime." Tr. at 1334. By the time of Taylor's sentencing, this Court had held on multiple occasions that that aggravator "may only be used when a trial court is considering imposition of a sentence which was shorter than the presumptive sentence." *Jones v. State*, 675 N.E.2d 1084, 1088 (Ind. 1996). *Accord Mayberry v. State*, 670 N.E.2d 1262, 1270 (Ind. 1996); *Penick v. State*, 659 N.E.2d 484, 488 (Ind. 1995); *Evans v. State*, 497 N.E.2d 919, 923 (Ind. 1986). There is no evidence in the record that the trial court considered a sentence shorter than the presumptive. The trial court erroneously used this factor to support a maximum sentence.

*Id.* While the trial court did not explicitly use the words "aggravating factor" in making the statement Caudill challenges, it is possible the statement could be considered as such and was improper under *Taylor*.

However, later that year, our Indiana Supreme Court held the opposite in *Mathews v. State*, 849 N.E.2d 578 (Ind. 2006):

Dorsey [Mathews] argues that the trial court relied on improper aggravating circumstances to enhance his sentences and to order them to be run consecutively. Dorsey first argues that this Court has consistently held that the [phrase] "depreciate the seriousness of the offense" be used as an aggravating factor only when the court is considering the imposition of a shorter sentence than the presumptive. This is not an accurate statement. To the contrary, we have held that it is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed. *See Walter v. State*, 727 N.E.2d 443, 447 (Ind. 2000); *Huffman v. State*, 717 N.E.2d 571, 577 (Ind. 1999); *Ector v. State*, 639 N.E.2d 1014, 1016 (Ind. 1994); *Evans v. State*, 497 N.E.2d 919, 923-24 (Ind. 1986).

*Id*. at 589-90. Thus, we conclude, based on the holding in *Mathews*, the trial court did not abuse its discretion when it determined that, "[U]nder those circumstances I find that to impose a mitigated or to consider that factor to impose a mitigated or even the advisory sentence would diminish the seriousness of the offense[,]" (Tr. at 200), as a reason to enhance Caudill's sentence.[11]

# Conclusion

---

[11] Furthermore, a "single aggravating circumstance may be sufficient to enhance a sentence. When a trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld." *Baumholser v. State*, 62 N.E.3d 411, 417 (Ind. Ct. App. 2016), (quoting *Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind. 1999)), *trans. denied.* Here, there were multiple aggravators considered by the trial court besides that which Caudill challenges. Caudill planned and executed the robbery and killing of an elderly shop owner and attempted to conceal the evidence of his crime. In addition, Caudill had a lengthy criminal record with multiple felony charges pending before the State dismissed those charges pursuant to a plea agreement.

[18] The trial court did not abuse its discretion[12] when it refused to consider as mitigators Caudill's guilty plea and statement of remorse. Additionally, the trial court did not abuse its discretion when it determined the imposition of an advisory sentence would "diminish the seriousness of the offense." (*Id.*) We affirm.

[19] Affirmed.

Najam, J., and Bailey, J., concur.

---

[12] Caudill frames his arguments as if they are reviewable by this court under Indiana Appellate Rule 7(B), which grants us jurisdiction to determine the appropriateness of his sentence based on the nature of the offense and the character of the offender. The State counters we should review Caudill's arguments for abuse of discretion, which we agree is the correct standard of review. *See Anglemyer*, 868 N.E.2d at 490 (appellate court reviews sentencing court's findings regarding aggravators and mitigators for an abuse of discretion). However, we note Caudill's sentence is also appropriate under Indiana Appellate Rule 7(B) because Caudill's plea and alleged remorse cannot minimize the heinous nature of his crimes or the fact his extensive criminal history reflects poorly on his character.